UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PIETER AREND FOLKENS, dba A HIGHER PORPOISE DESIGN GROUP,<br><br>    Plaintiff,<br><br>    v.<br><br>WYLAND (NFN), aka ROBERT THOMAS WYLAND, an individual; WYLAND WORLDWIDE, LLC, a California Corporation; WYLAND GALLERIES, INC., a California Corporation; SIGNATURE GALLERY GROUP, INC., a Nevada Corporation dba WYLAND GALLERIES; and DOES 1 through 50, inclusive,<br><br>    Defendants. | No. 2:14-cv-02197-JAM-CKD<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON COPYRIGHT INFRINGEMENT CLAIM** |

This action arises from a copyright dispute between Plaintiff Folkens dba A Higher Porpoise Design Group ("Plaintiff") and Defendants Wyland (NFN), Wyland Worldwide, LLC, Wyland Galleries, Inc., and Signature Gallery Group, Inc. (collectively, "Defendants"). Defendants filed a motion for summary judgment (Doc. #33). This Order addresses the first claim for relief for copyright infringement as to the painting by Wyland entitled "Life in the Living Sea"; the Court took this

1

portion of Defendants' motion under submission at the hearing on March 22, 2016. For the reasons stated below, the Court GRANTS the motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed. Plaintiff is a wildlife artist, researcher, and author known for his work in the field of marine mammals. First Am. Compl. (FAC) ¶ 5. Wyland is a "marine wildlife artist whose giant 'whaling wall' murals grace 100 buildings worldwide." Notice of Mot. & Mot. of Defs. For Summ. J.; Mem. of P. & A. ("Mot.") 2:5-6.

Plaintiff is the author and copyright owner of a pen and ink illustration, published and registered in 1979, and entitled "Two Tursiops Truncatus" a.k.a. "Two Dolphins." FAC ¶ 14.

In 2011, Wyland created a giclée on canvas (color photocopy made on inkjet printers) entitled "Life in the Living Sea." FAC ¶ 17; Wyland Decl. ¶ 18.

On September 22, 2014, Plaintiff filed this lawsuit, claiming in part that Wyland's "Life in the Living Sea" infringes Plaintiff's "Two Dolphins" (Doc. #1). Plaintiff then filed a First Amended Complaint (Doc. #14). He asserts this copyright infringement claim "against the artist Wyland and Wyland Worldwide, LLC, the company that owns the copyright in 'Life in the Living Sea.'" Mot. 6:12-14. "He also asserts [this] infringement claim[] against Wyland Galleries, Inc. and Signature Gallery Group, Inc. which he . . . asserts are art galleries that sold th[e] work[]." Id. at 6:14-15. Plaintiff filed an opposition on March 8, 2016 (Doc. #45). Thereafter, on March 15,

2016, Defendants filed a reply accompanied by evidentiary objections (Doc. ##48, 50).

## II.   OPINION

### A.   Evidentiary Objections

Defendants raise numerous evidentiary objections to Plaintiff's declaration and exhibits (Doc. #50).  Specifically, Defendants object to Plaintiff's declaration, paragraphs 16–20, and the corresponding exhibits that compare "Two Dolphins" with "Life in the Living Sea," under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Federal Rules of Evidence Rule 701 (opinion testimony by lay witness) and Rule 702 (no qualification of expert witness).  Exs. 11b, 11d–g.  The Court need not address these objections, however, because even if the Court assumes this evidence is admissible, it does not create a genuine issue of material fact.  Instead, the evidence purports to show copying of the dolphins' general outlines, which under Satava v. Lowry, 323 F.3d 805 (9th Cir. 2003), is an unprotectable element not entitled to copyright protection.

Defendants also object to exhibits that compare "Life in the Living Sea" with "Love in the Sea."  Exs. 19a-b; Folkens Decl. ¶ 31.  The Court need not address these objections, however, because in ruling on this motion it compares "Life in the Living Sea" with "Two Dolphins."  See Norse v. City of Santa Cruz, 629 F.3d 966, 973–74 (9th Cir. 2010).

### B.   Copyright Infringement Claim

#### 1.   Copyright Infringement Standard

"To demonstrate copyright infringement, the plaintiff must

prove [two elements: (1)] ownership of a valid copyright and [(2)] copying of constituent elements of the work that are original." Twentieth Century Fox Film Corp. v. Entm't Distrib., 429 F.3d 869, 876 (9th Cir. 2005). Defendants do not dispute the first element—ownership of a valid copyright. See, e.g., Reply 2:23-24 (stating "*Two Dolphins* as a whole is a copyrightable work"). "The instant motion addresses the second element—that is, whether, in creating the accused work[], Wyland copied 'Two Dolphins.'" Mot. 8:26-28.

Since direct evidence of copying is not available in most cases, the second element—copying—"may be established by showing that the works in question 'are substantially similar in their protected elements' and that the infringing party 'had access' to the copyrighted work." Rice v. Fox Broad. Co., 330 F.3d 1170, 1174 (9th Cir. 2003) (quoting Metcalf v. Bochco, 294 F.3d 1069, 1072 (9th Cir. 2002)). Defendants do not contest access and instead argue that "as a matter of law, there is no substantial similarity." Mot. 9:3.

In considering substantial similarities between two works, the Ninth Circuit employs both an extrinsic test and intrinsic test. "[T]he extrinsic test . . . objectively considers whether there are substantial similarities in **both** ideas and expression, whereas the intrinsic test continues to measure expression subjectively." Apple Comput., Inc. v. Microsoft Corp., 35 F.3d 1435, 1442 (9th Cir. 1994). "The standard for infringement— substantially similar or virtually identical—determined at the 'extrinsic' stage is applied at the 'intrinsic' stage." Mattel, Inc. v. MGA Entm't, Inc., 616 F.3d 904, 914 (9th Cir. 2010), as

4

amended on denial of reh'g (Oct. 21, 2010).  "The 'intrinsic test' is a subjective comparison that focuses on whether the ordinary, reasonable audience would find the works substantially similar in the total concept and feel of the works."  Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002) (internal quotation marks omitted).

On a motion for summary judgement, "only the extrinsic test is important."  Kouf v. Walt Disney Pictures & Television, 16 F.3d 1042, 1045 (9th Cir. 1994); see also Shaw v. Lindheim, 919 F.2d 1353, 1359 (9th Cir. 1990) (holding that in a copyright case involving literary works, plaintiff's satisfaction of the extrinsic test is sufficient to survive summary judgment on substantial similarity issue); L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 852 n.5 (9th Cir. 2012), as amended on denial of reh'g and reh'g en banc (June 13, 2012) (indicating "the 'Shaw rule' applies to art work").

When applying the extrinsic test, the court examines whether the two works share a similarity of ideas and expression, as measured by external, objective criteria.  This examination "often requires analytical dissection of a work."  Three Boys Music Corp. v. Bolton, 212 F.3d 477, 485 (9th Cir. 2000).  To accomplish analytical dissection, the court divides a work into its constituent parts to determine whether similarities between the works are attributable to protectable or unprotectable elements.  In other words, the court "distinguish[es] protectible from unprotectible elements and ask[s] only whether the protectible elements in two works are substantially similar." L.A. Printex Indus., Inc., 676 F.3d at 849–50 (holding that

1  "original selection, coordination, and arrangement of" flowers,
2  buds, stems, and leaves is protectable expression).  As relevant
3  here, in comparing art works the court examines "the similarities
4  in their 'objective details in appearance,' including, but not
5  limited to, 'the subject matter, shapes, colors, materials, and
6  arrangement of the representations.'"  Id. (quoting Cavalier, 297
7  F.3d at 826 (comparing art works)).
8       Summary judgment under the extrinsic test "is not highly
9  favored" in copyright cases.  L.A. Printex Indus., Inc., 676 F.3d
10 at 848 (internal quotation marks omitted).  However, "[s]ummary
11 judgement is appropriate if the court can conclude, after viewing
12 the evidence and drawing inferences in a manner most favorable to
13 the non-moving party, that no reasonable juror could find
14 substantial similarity of ideas and expression," i.e., no
15 reasonable juror could find the extrinsic test met.  Id.
16 (internal quotation marks omitted).
17           2.   Analysis
18       The parties dispute whether two dolphins crossing underwater
19 is a protectable element.  Defendants argue that Plaintiff "may
20 not prevent others from depicting dolphins that simply bear
21 realistic features of dolphins, crossing underwater."  Mot. 12:4-
22 5.
23       Plaintiff recognizes that his "Two Dolphins" "may only
24 receive 'thin protection,'" Opp'n 9:14-15, but counters that the
25 pose, attitude, perspectives, and arrangement of the two dolphins
26 are protectable elements.  See id. at 10:4-6.  As for the two
27 dolphins' arrangement, Plaintiff contended at the hearing that
28 there is no evidence of dolphins in nature crossing in the

1  specific pose featured in both parties' works.

2      Defendants' reply that "the only original element
3  [Plaintiff] can claim that also appears in Wyland's work is that
4  the two bottlenose dolphins cross.  This generic addition to the
5  depiction of actual dolphins does not amount to the 'quantum of
6  originality' required to protect this element of Plaintiff's
7  work." (Reply 8:3-6.)

8      The main similarity between Wyland's "Life in the Living
9  Sea" and Plaintiff's "Two Dolphins" is two dolphins swimming
10 underwater, with one swimming upright and the other crossing
11 horizontally.  See Mot. 9:16-10:5 (discussing the main
12 similarities and differences between the parties' works).

13     But this idea of a dolphin swimming underwater is not a
14 protectable element.  Much like a narwhal's tusk, Plaintiff's
15 arguments do not help it survive in the sea of Ninth Circuit
16 precedent.  In the Ninth Circuit, natural positioning and
17 physiology are not protectable.  For instance, in Satava v.
18 Lowry, 323 F.3d 805 (9th Cir. 2003), the plaintiff asserted
19 copyright protection in a glass-in-glass jellyfish sculpture.
20 The Ninth Circuit held that the plaintiff "may not prevent others
21 from copying aspects of his sculptures resulting from either
22 jellyfish physiology or from their depiction in the glass-in-
23 glass medium," since the sculptures combined several
24 unprotectable elements, including jellyfish with tentacles or
25 bells, jellyfish in bright colors, and jellyfish swimming
26 vertically.  Id. at 810-11.  Similarly, in Aliotti v. R. Dakin &
27 Co., the Ninth Circuit held: "No copyright protection may be
28 afforded to the idea of producing stuffed dinosaur toys or to

7

1   elements of expression that necessarily follow from the idea of
2   such dolls." 831 F.2d 898, 901 (9th Cir. 1987); see also <u>George</u>
3   <u>S. Chen Corp. v. Cadona Int'l, Inc.</u>, 266 F. App'x 523, 524 (9th
4   Cir. 2008) (finding the concept of "a 'cute' dolphin—with an open
5   mouth and an uplifted, twisted tail which made it appear to be
6   swimming—" is an unprotectable element); <u>Florentine Art Studio,</u>
7   <u>Inc. v. Vedet K. Corp.</u>, 891 F. Supp. 532, 537 (C.D. Cal. 1995)
8   (finding in part that the idea of three dolphins jumping or
9   leaping is unprotectable).
10       Moreover, Plaintiff has "failed to identify any elements" of
11  his work "that are not commonplace or dictated by the idea of
12  [two] swimming dolphin[s]." <u>George S. Chen Corp.</u>, 266 F. App'x
13  at 524. The concept of two dolphins crossing underwater
14  "necessarily follow[s] from the idea of" two dolphins swimming
15  together. <u>Id.</u> Specifically, the cross-dolphin pose featured in
16  both works results from dolphin physiology and behavior since
17  dolphins are social animals, they live and travel in groups, and
18  for these reasons, they are commonly depicted swimming close
19  together. <u>See</u> <u>Aliotti</u>, 831 F.2d at 901 n.1 (explaining that a
20  Tyrannosaurus stuffed toy's open mouth was an unprotectable
21  element, since Tyrannosaurus "was a carnivore and is commonly
22  pictured with its mouth open"). Therefore, no reasonable juror
23  could find substantial similarity of ideas and expression, since
24  the similarities between Plaintiff's "Two Dolphins" and Wyland's
25  "Life in the Living Sea" are unprotectable elements.
26       Plaintiff also argues there is evidence of direct copying.
27  Opp'n 12:21-14:1. At the hearing, he contended that this is a
28  case of tracing. However, Plaintiff's Exhibit 12 shows a 300%

8

enlargement of "Two Dolphins" over a different painting, and Frank McGrath's Expert Report, Exhibit 5, compares "Two Dolphins" and a different painting that is not at issue in this portion of Defendants' motion.  While Plaintiff's Exhibit 13 compares the parties' works, it focuses on the dolphins' general outlines, which is an unprotectable element, and "a [single] point of intersection of the two dolphins" in Plaintiff's work, which Plaintiff focused on at the hearing.  Overall, this purported evidence of direct copying is insufficient to establish the presence of a genuine dispute of material fact on the copying issue.  Therefore, summary judgment for Defendants is proper on this portion of their motion.

### III.   ORDER

For the reasons set forth above, the Court GRANTS Defendants' Motion for Summary Judgment on Plaintiff's first claim for relief for copyright infringement as to the painting by Wyland entitled "Life in the Living Sea" of Plaintiff's First Amended Complaint.

IT IS SO ORDERED.

Dated: April 6, 2016

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE